IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DWIGHT L. COOK, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 99-PWG-0616-S |
| UNITED STATES STEEL CORPORATION, | ) |
| Defendant. | ) |

FILED 02 JUL 22 AM 10:34 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED
JUL 2 2 2002

## MEMORANDUM OF OPINION

Dwight L. Cook, plaintiff, filed this complaint against defendant United States Steel Corporation ("USX") alleging a violation of Title VII, codified at 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Mr. Cook alleges that he was subjected to racial discrimination and retaliation by USX. Pending for disposition is plaintiff's Motion for Summary Judgment. (Document #8). The magistrate judge exercises dispositive jurisdiction with the consent of the parties.

## APPLICABLE LAW

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of



his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## RELEVANT UNDISPUTED FACTS

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff. Cook has been employed at USX since 1993. In 1997, Cook was working as a machine equipment operator in a blast furnace. On or about October 23, 1997, Cook and David Payne, another employee, were involved in an altercation. Payne entered the crew shack where Cook was sitting and asked Cook for sand (Cook depo, p. 55). Before Cook could "even get [his] hard hat and glasses" (Cook depo, p 55), Payne reentered the crew shack where Cook was still sitting (Cook depo, 55, 99) and ordered him to "get off your black ass now" (Cook depo. 55, 99) while pointing his finger at Cook (Cook depo, p. 55). After Cook twice told Payne to get his hands

2

or fingers out of his [Cook's] face (Cook depo. 56, Payne depo. 53), Payne called Richard Green, the vice foreman to come to the crew shack. (Payne depo. p. 53) After Green entered the crew shack, the following occurred according to the deposition testimony of Cook:

> [W]hen Richard Green came in, he said, "What is the problem?" I said, "Payne is acting like he wants to hit me. I said, I don't know what his problem is ... but if he touches me, I am going to kick his fat ass. ... [Green] asked me what was the problem again, and I said, "Man, ... I don't know." ... "I don't know. He is like all bent out of shape," you know pretty much to that effect.

(Cook depo., pp. 56-57).

In his deposition, Cook was asked:

> Q: Did you tell Mr. Green that Mr. Payne had said to get your – "Get off your black ass."?
>
> A: I mentioned the conversation to him, yes. I mentioned the conversation to him.
>
> Q: What did you tell him about that?
>
> A: Well I told him, I said, "Man, I don't know what his problem is." I mean you know, the Rebel bandanna and all that stuff, you know, and he's making racial slurs, you know.

(Cook depo., p. 60).

Outside of the presence of Payne, Cook told Green:

> "When he [Payne] came in, he startled me. I thought he was going to hit me." I said, "The first thing I did, I saw –" you know where we eat at, we have got like knives on the table right there in our break room. I

3

> said... man, if he would have hit me, man, I was going to take that knife and I was going to get him."

(Cook depo, p. 96).

While Green talked to both Payne and Cook about the incident, (Green depo, p. 31), he did not talk to Booker Reynolds although Reynolds was in the crew shack at the time of the altercation between Cook and Payne. (Green depo, p. 34-35). Green testified that he did not talk to Reynolds "because when I walked in, I heard the threat being made." (Green depo., pp.34-35). In his affidavit, Reynolds stated that "[b]ased on what I observed, I thought that Mr. Payne had purposefully agitated Dwight Cook." He further stated that he "advised company representatives that night of what I had observed and advised them again at their request later in the week."

Green instructed Cook to go back to work. Green later approached Cook and asked if he was upset about what happened:

> I said, "Yeah, a little bit." I said, "I feel like he didn't have the right to, you know talk to me and deal with me like that." He said, "Well, do you have a problem with the Rebel bandana?" I said, "No, not personally." I said, "But when it comes to the fact that he acts like he wants to jump on me, yeah, I have a problem with that." I said, "That's not right ..." Richard Green said, "Yeah, I know, Cook." He said, "Well, just let it go. Let it go, because if I send you home, I have got to send him home, also." ...

(Cook depo., p. 57-58).

Cook then went back to the crew shack, and Green came to Cook again:

> He said, "Cook, are you all right?" I said, "Yeah, man, I am all right. You know, I'm fine."

(Cook depo., p. 58).

Five or 10 minutes later Cook was called to the command center and Green told him that Green had decided that Cook was to be sent home for making threats to another employee. (Cook depo, p. 58) The next day Cook was suspended for five days. On October 28, 1997, the suspension was converted into a discharge. On October 28, 1997, Cook filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). USX received the charge on November 5, 1997 (defendant's exhibit M). At some point between November 5, 1997 and December 8, 1997, USX approached Cook with a "last chance agreement" which provided in part that, in return for the withdrawal of the EEOC charge, he would get his job back but without back pay for lost wages. When plaintiff tried to negotiate the terms of the last chance agreement to allow him to keep his EEO charges, he was told by McClain "Take it or leave it. ... You sign it or stay out in the street. ... This is my final offer and this is all I'm offering you." (Cook depo, pp. 136-37).

I. Claim of Disparate Treatment based on Race

This claim is based upon "the way that the discipline was handled after the altercation with his co-worker, Payne. The difference in discipline began when the Plaintiff was sent home on the night of the incident while Payne was allowed to remain on the job. Also, the Plaintiff was ordered to undergo a drug screen, which Payne was not required to undergo." (Cook's brief in opposition, pp. 7-8).

In the absence of direct evidence of racial discrimination, the analysis is controlled by the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discriminatory discipline under Title VII and § 1981,[1]

---

[1] Section 1981 claims and Title VII claims are evaluated under the same principle and framework. *Alexander v. Fulton County, GA*, 207 F.3d 1303, 1314, n. 6 (11th Cir. 2000); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 471 (11th Cir. 1999).

plaintiff must show that (1) that he was a member of a protected class; (2) that he was qualified for the position at issue; (3) that adverse employment action was taken against him; and (4) that the employer treated similarly situated employees outside the protected class more favorably. See, *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

If a *prima facie* case is established, which in turn raises an inference of racial discrimination, the defendant bears the burden of presenting "legitimate, non-discriminatory reasons for its action." *Holifield*, 115 F.3d at 1564 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)). If the defendant carries that burden, plaintiff has an additional burden of proving defendant's proffered reason for the adverse employment action to be mere pretext for actual racial discrimination. *Equal Employment Opportunity Commission v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000); *Holifield*, 115 F.3d at 1565.

Defendant argues that plaintiff has failed to satisfy the fourth element of a *prima facie* case. In order to meet his burden, Mr. Cook must show that he received a more severe punishment than white employees of USX who were accused of the same or similar conduct. The law merely requires that a comparator to the plaintiff is shown to have engaged in "similar" acts of misconduct. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1334 (11th Cir. 2000). The United States Supreme Court has instructed district courts that the conduct must be of "comparable seriousness." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976). Plaintiff's position is that his only "comparator is, and always has been, Payne." (Plaintiff's brief in opposition, p. 10.)

USX argues that Payne and Cook are not similarly situated because Payne did not threaten Cook as Cook threatened Payne. Mr. Cook argues that because Payne was the "instigator

6

and aggressor," Payne should have been sent home as well and suspended or neither Payne nor Cook should have been disciplined. The actual conduct, however, of the principles was not comparable. Payne crudely attempted to spur Cook into faster action in responding to a work place request by ordering Cook to "Get off your black ass now." Mr. Cook told Green in Payne's presence that " if he [Payne] touches me, I am going to kick his fat ass." Cook's threat to Payne was not in response to a threat by Payne but rather to an unquestionably racially offensive comment. A threat to do bodily harm and an offensive comment, even if overtly racial, are simply not of comparable seriousness. Payne and Cook were not similarly situated. Mr. Cook has failed to prove a *prima facie* case of racial discrimination.[2/]

Had Mr. Cook established a prima facie case, USX has nonetheless offered sufficient evidence to rebut the inference of racial discrimination by presenting legitimate, non-discriminatory reasons for its employment actions. Specifically, USX argues that Cook was sent home and suspended because after the incident he did not calm down (Green depo, pp. 29-30, 41-42).

Cook argues as evidence of pretext that Green failed to talk to Reynolds, the only non-interested witness, Green failed to investigate the origin of the altercation, and Green failed to discipline Payne for violating the company's race discrimination policy when he told Cook to "Get up off your black ass now." Plaintiff states in his brief but not in deposition that he told Green that Payne had used the "black ass" language. Green testified in deposition that he was not told that Payne told Cook to get up off his ass or get up off his black ass. Plaintiff's own deposition testimony with respect to what he told Green concerning Payne's behavior is more equivocal. Plaintiff has not offered deposition testimony indicating he actually told Green that Payne used the

---

[2/] Payne's conduct was no doubt reprehensible and inexcusable it simply did not amount to a threat to do harm.

7

offensive language in telling him to get up off his ass or get up off his black ass. The only testimony provided by plaintiff is that Mr. Cook told Green that he didn't know what Payne's problem was and that Payne was acting like he wants to hit him. Mr. Cook submitted the affidavit of Booker Reynolds in which Mr. Reynolds states that "[b]ased on what I observed, I thought that Mr. Payne had purposefully agitated Dwight Cook," and further that he "advised <u>company representatives</u> that night of what I had observed and advised them again at their request later in the week." (emphasis added). Although Mr. Reynolds referred to Green earlier in an affidavit, he never states that he told Green that Payne intentionally agitated Mr. Cook. In his deposition Cook admitted that he also told <u>Green</u> that "if Payne touched him, he was "going to kick his fat ass." (Cook depo, p.56-57) Outside of Payne's presence, Cook told Green "man, if he would have hit me, man, I was going to take that knife and I was going to get him." (Cook depo 96.) Green heard both of these threats from Cook himself. He heard of no threat by Payne and received no specifics information concerning Payne's instigation despite Green affording Cook the opportunity to tell him what the problem was. Although Payne may well have been in violation of the company discrimination policy and Green had been told that Payne told plaintiff to "get off your black ass," the failure to discipline Payne does not support the inference that the reason proffered by USX for sending Mr. Cook was sent home was a pretext for racial discrimination.

II. <u>Claim of Retaliation</u>

Although USX maintains that Mr. Cook was required to raise his retaliation claim in his EEOC charge in order to seek relief, controlling precedent is to the contrary. See *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) ("It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that

two charges would have to be filed in a retaliation case a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.")

To establish a *prima facie* case of retaliation, plaintiff must prove (1) he participated in an activity protected by Title VII (2) he suffered an adverse employment action and (3) there is a causal connection between the protected activity and the adverse employment decision. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 271, 587 (11th Cir. 2000), *reh. denied*, 229 F.3d 1171 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001). It is undisputed that Mr. Cook participated in a protected activity when he filed his EEOC charge. *Gupta v. Florida Bd. of Regents*, 212 F.3d at 587. Plaintiff argues that the requirement that he withdraw his pending EEOC charge in order to be rehired and his lost wages due to his refusal to sign the last chance agreement constitutes adverse employment actions. Mr. Cook had been subject to the ultimate adverse employment action. He had been terminated. The settlement offer after termination in the form of a last chance offer could not itself constitute an adverse employment action. In *Gupta*, 212 F.3d at 589-90, the Eleventh Circuit Court of Appeals has addressed the effect of settlements offered in Title VII claims stating:

> [A]n employer is not legally required to attempt to settle an employee's Title VII claim at all. Any action or inaction in regard to settlement of a claim cannot be retaliation for making the claim in any meaningful sense, because every action or inaction in regard to settlement of the claim is caused by the claim. The anti-retaliation provisions of the various job discrimination statutes are aimed at preventing the employer from punishing the employee by making job conditions worse. The failure to settle a claim for whatever reason does not make job conditions worse as a result of the claim having been made. They are

9

> already "worse" (if the underlying claim is valid). The failure to settle is not something that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson*, 120 F.3d at 1300. The settlement of a claim, in short, is not a condition of employment. [footnote omitted].

Neither the settlement offer nor the alleged loss of wages predicated upon Mr. Cook's refusal of the offer was an adverse employment action. Mr. Cook has failed to establish a *prima facie* case of retaliation. Likewise, it is unnecessary to address whether USX has produced legitimate reasons for the adverse employment action and whether the reasons were pretextual.

Based on the foregoing, the Motion for Summary Judgment filed by USX is due to be granted. A separate final judgment consistent with this memorandum opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 19th day of July, 2002.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE